**FILED
CLERK**

JGK 09/13/2017
**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

1    UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2    ------------------------------------

NEW BEGINNINGS HEALTHCARE                Docket 17-cv-03650-JFB-SIL
3      FOR WOMEN, LLC,

United States Courthouse
4                           *Plaintiff,*   Central Islip, New York

5              v.
August 31, 2017
EVO PAYMENTS INTERNATIONAL, LLC          1:08:43 p.m. – 1:44:06 p.m.
6      et al,

7                           *Defendants.*

------------------------------------

8

9              TRANSCRIPT FOR CIVIL CAUSE
- TELEPHONIC CONFERENCE FOR ORAL RULING ON MOTION TO
10     DISMISS AND MOTION TO STRIKE THE CLASS ALLEGATIONS -
BEFORE THE HONORABLE JOSEPH F. BIANCO
11              UNITED STATES DISTRICT JUDGE

12   A P P E A R A N C E S :

13   *For Plaintiff:*          E. ADAM WEBB, ESQ.
Webb, Klase & Lemond, LLC
14                             1900 The Exchange SE, Suite 480
Atlanta, Georgia 30339
15                             (770) 444-0773; (770) 271-9950 fax
adam@webbllc.com

16

17   *For Defendants:*         JONATHAN CHALLY, ESQ.
DAVID LEWIS BALSER, ESQ.
18                             King & Spalding, LLP, 40th Floor
1180 Peachtree Street, NE
19                             Atlanta, Georgia 30309-3521
(404) 572-4600; (404) 572-5100 fax
20

21

*Transcriber:*            AA EXPRESS TRANSCRIPTS
22                             195 Willoughby Avenue, Suite 1514
Brooklyn, New York 11205
23                             (888) 456-9716; (888) 677-6131 fax
aaexpress@court-transcripts.net

24

25        *(Proceedings recorded by electronic sound recording)*

1          COURTROOM DEPUTY:  Civil cause for a telephone

2    conference in Civil 17-3650, *New Beginnings Health Care for*

3    *Women v. EVO Payments*.  Counsel, please state your appearances

4    for the record.

5          MR. WEBB:  Adam Webb for Plaintiff.  For the

6    Defendant, you have David Balser and John Chally.

7          THE COURT:  Okay.  Good afternoon, everybody.  This is

8    Judge Bianco.  As you know, I scheduled the conference because I

9    wanted to place the Court's oral ruling on the record with

10   respect to the pending motion to dismiss, and to the strike the

11   class allegations.  What I intend to do is to place a fairly

12   detailed oral ruling on the record.  It will probably take about

13   20 minutes or so to do that.  We're recording this, so if you

14   want to order a copy of the transcript of this ruling you could

15   do so through the clerk's office.  It's also possible at some

16   future time, I might issue a written opinion.  I haven't decided

17   whether to do that or not.  It wouldn't be in the immediate

18   future, but there's a good chance that this will simply be the

19   ruling of the Court.  And obviously, I'll answer any questions

20   when I'm done.

21          For reasons I'm going to explain in detail in a

22   moment, I'm granting the motion with respect to only Counts 1

23   and 2, and I'm denying the motion to dismiss with respect to the

24   remaining counts.  I'm also denying the motion to strike the

25   class allegations at this juncture of the case.

1        First, with respect to the motion to dismiss, the

2   standard of review is well-settled.  I'm not going to belabor

3   the record by setting it forth in any great detail.  I adopt the

4   standard of review in its entirety as set forth in one of my

5   prior opinions, *Harbor Distributing Corp. v. GTE Operations*

6   *Support Incorporated*, 2016 WL 1228615 at *3 (E.D.N.Y. March 28,

7   2016).  In particular, I note under that standard, I have to

8   accept the factual allegations set forth in the complaint as

9   true, I have to draw all reasonable inferences in the

10  Plaintiff's favor, and then determine whether a plausible claim

11  exists under the Iqbal-Twombly standard as pronounced by the

12  Supreme Court.  Both sides also agree that on a motion to

13  dismiss, the Court may consider any documents that are attached,

14  referred to, or integral to the complaint.  In this case,

15  obviously, that would include the contract that is the subject

16  of dispute.  That's *Chambers v. Time Warner Inc.*, 282, F.3d 147,

17  152 (2d Cir. 2002).

18        I'm going to give a brief summary of the allegations

19  as set forth in the amended complaint before moving to each

20  count.  As set forth in the amended complaint, the Plaintiff

21  alleges that in early May 2015, Plaintiff discussed switching to

22  EVO for payment processing services, and the parties

23  preliminarily agreed on the fees and charges Plaintiff would pay

24  in the event Plaintiff decided to switch.  That's Paragraph 24.

25  EVO subsequently faxed a two-page merchant application, which

1   I'll refer to as the Agreement, to Plaintiff on May 14, 2015.

2   That's Paragraph 26.  The pricing information matched the terms

3   to which the parties had preliminarily agreed.  Paragraph 27.

4   On May 18, 2015, Plaintiff's representative signed the Agreement

5   and faxed a copy to EVO.  Paragraph 28.

6           The Agreement included some detailed pricing

7   information on the fees EVO would charge Plaintiff for its

8   processing services.  That's at Page 2 of the Agreement.

9   Furthermore, on its first page, it states that "a Visa member

10  must be a principal (signer to the merchant agreement).  At the

11  bottom of the second page above the signature line, there's a

12  clause stating that "Merchant understands that this Agreement

13  shall not effect until merchant has been approved by a bank, and

14  a merchant number is issued."  Just below that clause and

15  immediately above Plaintiff signature is another clause that

16  states "If merchant submit a transaction hereunder, merchant

17  will be deemed to have accepted the terms and conditions of the

18  merchant processing agreement."  The signature block that

19  follows this statement put spaces for signatures by EVO and

20  Deutsche Bank.  Neither signs it however.  And Plaintiff alleges

21  that it is EVO's standard practice to avoid signing merchant

22  agreements.  That's Paragraph 37 of the complaint.

23          Shortly after Plaintiff signed the Agreement, it began

24  submitting transactions to EVO.  That's Paragraph 39.  Plaintiff

25  eventually noticed "numerous improper charges" listed on its

1    account statements.  That's Paragraph 40.  These included fees

2    that it alleges it never agreed to pay, such as shipping fees,

3    non-PCI fees, a PCI compliance fee, and an IRS reporting fee.

4    As well as unauthorized increases to fees it had agreed to pay.

5    That's Paragraphs 40 through 45.

6         EVO deducted these fees automatically before Plaintiff

7    received its monthly statement.  That's Paragraph 42.  On

8    separate occasions, Plaintiff complained of the improper fees

9    and EVO would refund them.  Paragraph 43.  Over a year after

10   signing this Agreement, Plaintiff terminated its account with

11   EVO in July 2016.  That's Paragraph 44.

12        Now, moving to an analysis of the particular claims.

13   First is the threshold matter.  The parties disagree as to

14   whether Georgia or Pennsylvania law governs this case.  The

15   Second Circuit has stated, however, "Choice of law does not

16   matter, unless the laws of the competing jurisdictions are

17   actually in conflict."  *International Business Machines*

18   *Corporation v. Liberty Mutual Insurance Company*, 363 F.3d 137,

19   143 (2d Cir. 2004).

20        Having analyzed both Georgia or Pennsylvania law, I

21   find no meaningful conflict between Georgia and Pennsylvania law

22   on the basic contract principles that are at issue before the

23   Court today.  Therefore, in this decision, I provide primarily

24   Georgia law for purposes of the motion.  However, I also provide

25   some citations to Pennsylvania law, again, just to demonstrate

1   that there was no meaningful difference with respect to the

2   legal principles that the Court is analyzing today.

3          I'm now going to address the issue regarding the

4   flexibility of the Agreement.  The complaint alleges that the

5   Agreement is not enforceable because no EVO representative

6   signed it.  And by its terms, the Agreement, according to

7   Plaintiff, requires a countersignature.  EVO disagrees with

8   Plaintiff's reading of the contract as mandating a

9   countersignature, and argues that Plaintiff's performance

10  rendered the Agreement binding, even if such a signature was

11  required.

12         Under Georgia law, a party need not sign a contract

13  for it to be enforceable.  See *Cochran v. Eason*, 180 S.E.2d 702,

14  704.  (Ga. 1971).  "Assent to the terms of a contract may be

15  given other than by signatures." And acceptance can be inferred

16  from performance under the contract." *Valiant Steel and*

17  *Equipment Inc. v. Roadway Exposition, Inc.*, 421, S.E.2d 773, 776

18  (Georgia Court of Appeals, 1992).

19         Pennsylvania has the exact same legal principle as set

20  forth in *Terlescki v. E.I. Dupont de Nemours & Co.*, 1992

21  WL 211531 at *2 (E.D. Pa. August 24, 1992).  "A party need not

22  sign an agreement to be bound by it.  So long as it's acting

23  pursuant to its terms, this evidences his agreement."  Also,

24  *Grzech v. Unemployment Compensation Board of Review*, 56 Pa.

25  Commonwealth Ct. 9, 423 A.2d 1364 (1981).  "An offer, however,

1  can be accepted by … performance."

2  　　　　Although EVO did not sign the Agreement, the amended

3  complaint's unequivocal terms, clearly alleges that the parties

4  performed under the contract that's contained in several

5  paragraphs, including Paragraphs 39 through 45.  Given that

6  concession by the complaint, the Court concludes that this

7  performance renders the contract enforceable, even in the

8  absence of a countersignature.  Plaintiff argues that a

9  countersignature was a condition precedent to the Agreement's

10  enforceability, and absent satisfaction of this condition, the

11  parties' performance did not make the Agreement binding.

12  　　　　The Court agrees that it is true under Georgia law

13  that a contract is not enforceable where a condition precedent

14  to it has not been satisfied.  See *Brogdon Ex Rel. Cline v.*

15  *National Healthcare Corp.*, 103 F. Supp. 2d 1322, 1335 - Dist.

16  Court, ND Georgia, 2000.  As well as under Pennsylvania law,

17  Acme Markets v. Federal Armored Exp., Inc., 648 A.2d 1218, 1220,

18  437 Pa. Superior Ct. 41, 437 Pa. … - Pa: Superior …, 1994.  Both

19  for the proposition that condition precedent is one which is to

20  be performed before any right to be created therefore accrues.

21  (Quoting other cases.)

22  　　　　In my view, in this particular case, however, the

23  Agreement's language does not make Defendant's countersignature

24  a condition precedent in general.  Georgia disfavors conditions

25  precedent, and therefore, "a contractual provision is

1  interpreted as a condition precedent only if it is clear that

2  the parties intended it to operate that way." *Williams Service*

3  *Group, LLC v. National Union Fire Ins. Co. of Pittsburgh*, 495

4  Fed. Appx. 1, 5 (11th Cir. 2012).  As well as *Allentown*

5  *Patriots, Inc. v. City of Allentown*, 162 A. 3d 187, 1195 Pa.

6  Commonwealth Ct. (2017).  "In general, conditions precedent is

7  highly disfavored and will be strictly construed against the one

8  seeking to avail himself of them."

9          This high standard is met by using specific language,

10  such as -- and I'm now quoting from a Georgia case -- "on

11  condition that or if or provided or by explicit statements that

12  certain events are being construed as conditions precedent.

13  That comes from *Choate Construction Co. v. Ideal Electrical*

14  *Contractors, Inc.*, 246 Ga Appeals Court 626, 629 (2000).  In the

15  instant case that Plaintiff cites to support its argument,

16  neither uses this type of language or otherwise makes clear in

17  any way that a countersignature is required as a condition

18  precedent to enforceability.  Specifically, Plaintiff argues

19  that two clauses render EVO's countersignature condition

20  precedent to the Agreement.  The first clause states that a Visa

21  member, here Deutsche Bank, must be principal signer (to the

22  merchant agreement).  The second states that this Agreement

23  shall not take effect until merchant has been approved by a bank

24  and a merchant number is issued.

25          In the Court's view, neither of these uses of language

1    are typical or indicate a condition precedent.  See *Fulton*

2    *County v. Collum Properties* - 193 Ga. App. 774, 388 S.E.2d 916,

3    916 Ga. App. (1998).  Holding that the clause lacked language of

4    a condition precedent.  Did not create one.  As well as the

5    *Williams* case cited earlier.  495 Fed. Appx. 3, reaching the

6    same conclusion.  The second clause is use of the term "until

7    arguably could be construed as a condition precedent.  But by

8    its terms that clause only requires the bank to approve of the

9    merchant and issue a merchant number.  It does not state that

10   approval must be demonstrated via signature.

11          Furthermore, other language in the Agreement.  The

12   Court has reviewed the Agreement, there is no language that

13   expressly conditions enforcement on a countersignature.  Other

14   courts in similar circumstances have reached the same

15   conclusion, including *Harris v. City Mortgage Inc.*, 2014

16   WL 1767717 at *4, ND Georgia, May 2, 2014.  In the absence of

17   such language in this case, the presence of a signature block

18   for EVO is not sufficient for this Court to conclude a signature

19   on its behalf was a condition precedent to enforceability.  (Id

20   at *4, n.3.)  See also, under Pennsylvania law, *In re NuNET*

21   *Inc.*, 48 B.R. 300, 310 (E.D. Pa. 2006).  "The mere presence of

22   signature lines does not determine whether the parties intended

23   to be bound only upon the execution of the document by all

24   signatories."

25          Moreover, the Agreement indicates that the parties

1   contemplated that performance alone could be binding, because

2   just above the signature line, it states that "If merchant

3   submits a transaction hereunder, merchant will be deemed to have

4   accepted the terms and conditions of the merchant processing

5   agreement."  In light of this language and the context of the

6   entire Agreement, disfavor is shown towards condition precedence

7   under Georgia law, as well as Pennsylvania law, and the absence

8   of the language clearly signaling a condition precedence, I

9   conclude, as a matter of law, that the Agreement did not require

10  EVO's signature as a condition precedent to enforceability.

11          I just note that I did review the case cited by

12  Plaintiff that was invoked at oral argument, Liberty Salad Inc.

13  v. Groundhog Enterprises, Inc., 2017 WL 2903154 (E.D. Pa. July

14  7, 2017).  I don't believe it is persuasive in this case.  In

15  that case, the clause in the merchant processing agreement said

16  "By signing below, Merchant and the Undersigned agree,

17  acknowledge and understand that."  And then it goes on to say

18  "The Agreement will not take effect unless and until Merchant

19  has been approved by Bank and IPayment, and Merchant is assigned

20  and issued a Merchant Account Number."  And there's additional

21  language.  Specifically, this clause differs in my view from the

22  Agreement.  In this case, it expressly indicates that both

23  parties must sign in any event, even if there's disagreement

24  over whether that difference was material to the decision.  To

25  the extent, the court in Liberty Salad was interpreting the

1  language regarding approval and assignment of an account number

2  as also requiring a signature on the merchant application, I

3  simply respectfully disagree with that interpretation.  Because

4  as I noted, under both Pennsylvania and Georgia, the Defendant

5  is permitted to manifest approval of the contract without

6  necessarily signing it.  See _Terlescki_, 1992 WL 211531 at *2,

7  _Cochran_, 180 S.E.2d 704.  Georgia law is absolutely clear that

8  contract language must be unambiguous to create a condition

9  precedent.  See _Williams_, 495 Fed. Appx. 3.

10         In sum, as relates to this issue, I find that the

11  Defendant's signature was not a condition precedent to

12  enforceability, and therefore, the parties' alleged performance

13  set forth in the complaint made the Agreement enforceable in the

14  absence of such a signature.  See _Valiant Steel_, 421 S.E.2d 776.

15  Accordingly, based upon that ruling, I'm granting Defendant's

16  motion on Count 1, which the Plaintiffs seek a declaration that

17  the Agreement is unenforceable because of the absence of a

18  signature.  As well as I'm granting on Count 2, which asserts a

19  claim for unjust enrichment.  That turns, again, on the

20  unenforceability of the Agreement because of the absence of the

21  signature.  See _Camp Creek Hospitality Inns, Inc. v. Sheraton_

22  _Franchise Corporation_, 139 F. 3d 1396, 1413 - Court of Appeals,

23  11th Circuit 1998, which makes clear that recovery of the theory

24  of unjust enrichment is only available when as a matter of fact

25  there is no legal contract.

1          I am now turning to Count 4 of the Amended Complaint,

2    the breach of contract claim, which I find sufficiently asserts

3    a plausible breach of contract claim, including breach of the

4    implied covenant of good faith and fair dealing.  I find that

5    it's a plausible claim that survives a motion to dismiss.

6          With respect to the breach of contract, EVO initially

7    argued that -- just give me one second.

8          (Pause.)

9          With respect to the breach of contract claim, EVO

10   initially argued that it fails to state a claim, because it did

11   not identify the specific contractual provision that had

12   allegedly been violated.  I disagree.  When you read that claim

13   in its entirety, it makes clear that the breach of contract

14   claims are based on Defendant's imposition of some fees that

15   were not identified in the Agreement.  So, in other words, the

16   argument is that there's an absence of contractual provisions

17   that would allow them to impose those additional fees.  And in

18   addition, it's also alleged that other fees exceeded the amount

19   set forth in the Agreement.  So, they clearly articulate why

20   this would be a plausible breach of contract under the

21   provisions.

22         For example, Paragraph 40(b) states that Defendant

23   charged Plaintiff a shipping fee that Plaintiff never agreed to

24   pay.  Although the following allegations as to the non-PCI fees,

25   a PCI compliance fee, and an IRS reporting fee do not

1    specifically state that Plaintiff did not agree to pay those

2    fees.  Paragraph 64 clarifies that these fees set forth in

3    Paragraph 40 are identified anywhere in the merchant

4    application, and thus, are unauthorized, and would constitute

5    therefore a breach.

6            Likewise, Paragraph 115 indicates that the Defendant

7    violated the contract by assessing improper charges not provided

8    for in the contract.  Paragraph 40(a), meanwhile alleges that

9    Defendant charged Plaintiff a rate that exceeded the published

10   NABU fee rate at all times in violation of the Agreement that

11   states that all transactions will be assessed the current

12   publish interchanged rates, dues and assessments, in addition to

13   the basis points from the Agreement before referring merchants

14   to MasterCard's website.  That's Agreement at Clause 6.

15           Therefore, it's clear, based upon the language of the

16   amended complaint, as to what the Plaintiff is alleging how the

17   Defendants allegedly breached the contract in this particular

18   case.  See *Deere Construction, LLC v. CEMEX Construction*

19   *Materials Florida, LLC*, 198 Supp.3d 1332, 1341-42 (S.D. Fla.

20   2016).  In its reply, in that oral argument, EVO argued that the

21   express terms of the Agreement authorized them to impose

22   additional fees, IYD clause, that indicate fees "may vary each

23   month."  Some charges may appear as "one-time setup fee."

24   Others "will be added."  And then there's additional language.

25   "Under."  And then additional language.  "Certain

1    circumstances."  And Plaintiff should visit Defendant's website

2    "for additional information about these fees."

3            In order for the Defendant to prevail on these types

4    of arguments at the motion to dismiss phase, these statutory

5    provisions would have to be clear, unambiguous in their reading

6    in the Defendant's favor.  I do not believe that to be the case.

7    At a minimum, these provisions, either taken individually, or in

8    their entirety, in the Court's view, the Plaintiffs have an

9    argument that at a minimum, they're ambiguous if you construe

10   the language most favorably to the Plaintiffs, as the Court must

11   do in this case.  So, having concluded that it is not

12   unambiguously set forth in the Defendant's favor, it is not a

13   basis for the motion to dismiss in this case.

14           First, let me explain why.  Again, this is construed

15   most favorably to the Plaintiff.  The clause that says fees "may

16   vary each month" and directs Plaintiff to Defendant's website,

17   can be argued to Plaintiffs to be a reference to one specific

18   set of fees, namely the card association fees listed on page 2

19   of the Agreement at clause 12.  In full, that clause relating to

20   those fees reads "Merchant will also be assessed each month the

21   following card association fees, fund network fee and acceptance

22   and licensing fee.  These fees, which vary each month, are based

23   on" and then it has "various factors not relevant here.  For

24   additional information about ***these fees*** go to" and then it has

25   the Defendant's website.  Thus, the Plaintiffs certainly have a

1    plausible argument.  Then in the context of the sentences which

2    reference two of these three provisions on which Defendant

3    relies, could be read to refer to the card association fees

4    specifically.

5            Plaintiff also has a plausible argument that the one-

6    time setup fee meanwhile only applies to high-speed processing

7    and/or gateway activation.  That's in clause 9.  And that very

8    detailed "circumstance" the Agreement outlines, again, could

9    plausibly be argued by the Plaintiff, only apply to a specific-

10   type of surcharge identified in clause 4.  Thus, the Court

11   concludes that Plaintiff has articulated a plausible claim that

12   the provisions that EVO cites as providing it with broad

13   authority imposed fees, not listed in the Agreement, are limited

14   to the specific kinds of charges, and that they do not afford

15   EVO the type of authority it claims to have to impose the

16   additional fees.  Accordingly, because the complaint plausibly

17   alleges that EVO imposed fees not authorized by the Agreement

18   were in excess of the amounts set forth within the Agreement, I

19   find that the Plaintiffs have adequately set forth a claim for

20   breach of contract.

21           With respect to the implied covenant of good faith and

22   fair dealing, it is true that Georgia law does not recognize a

23   cause of action for breach of the implied covenant of good faith

24   and fair dealing.  See *Cohen Financial Group Inc. v. Employers*

25   *Insurance Company of Wausau*, 476 Fed. Appx. 834, 836 (11th Cir.

1   2012), as well as under Pennsylvania law, _Frey v. Grumbine's RV_,

2   2010 WL 4718750, at *11 (M.D. Pa. Nov. 15, 2010).  However, I've

3   gone back, I looked at the amended complaint, Count 4 does not

4   assert an independent claim for good faith and fair dealing.  In

5   fact, the heading itself, has them together, a breach of

6   contract claim, including a claim for breach of the covenant in

7   good faith and fair dealing.  So, I don't believe that this

8   complaint does allege it separately.  If it did, it would not be

9   in the cause of action, but I'd construe it as written to be a

10  breach of contract claim that includes that particular

11  allegation, among others.  So, I don't believe that's a basis to

12  dismiss Count 4.

13         Moving to the remaining claims for declaratory

14  judgment, Counts 3 and 5 of the amended complaint; denying the

15  motion to dismiss those at this time.  Just for background for a

16  moment.  It asserts that the agreement was six pages, not two as

17  alleged by Plaintiff.  And that the latter four pages consist of

18  more detailed terms and conditions that also bound Plaintiff.

19  The amended complaint alleges, and I'm accepting this as true

20  for purposes of this motion that the agreement was only two

21  pages, and that Plaintiff never received the terms and

22  conditions.  Based upon these allegations, Count 3, seeks a

23  declaration that the terms and conditions are not binding on the

24  Plaintiff.  In the alternative, Count 5 seeks a declaration that

25  various provisions of the terms and conditions are invalid on

1   the grounds that they are, among other things, illusory and

2   unconscionable.  That's Paragraphs 123 through 134.  EVO moves

3   to dismiss these counts, arguing that the Agreement is no longer

4   in effect, and therefore, Counts 3 and 5 are not recognizable

5   under the Declaratory Judgment Act.  Although the Defendant's

6   correct that the Declaratory Judgment Act requires a Plaintiff

7   to allege facts to show that the continuing controversy is real

8   and immediate, and it's a definite, rather than speculative,

9   threat of future injury.  Quoting from *AVRA v. Federal Deposit*

10  *Insurance Corporation*, 2013 WL 12106936 at *11 (ND Ga. January

11  18, 2015).

12          I find that such a controversy does exist here because

13  Plaintiff asserts this.  And having read the terms and

14  conditions, I think it's plausible that several of the

15  provisions in the agreement or the terms and conditions may

16  affect the Plaintiff's legal rights.  For example, and this is

17  just one example; Paragraph 47 in the amended complaint, said

18  that Defendant threatened to enforce several contractual terms

19  in response to Plaintiff's law suit, including (quoting from the

20  amended complaint) "an obligation to make and resolve billing

21  disputes within a certain time-period, a limitation of liability

22  clause, a provision supporting the applied New York law to

23  require all suits to be filed in New York, a class action

24  waiver, and a provision that purported to require Plaintiff to

25  pay EVO's attorney's fees in any billing dispute."

1          So, to this Court it's clear, that the validity of

2     these terms can still affect the Plaintiff's rights under

3     circumstances of this case, despite determination of the

4     agreement.  And therefore, I find that Counts 3 and 5

5     sufficiently state claims declaratory relief under the standard

6     that I just cited.

7          Finally, the Court moves to EVO's motion to strike the

8     class claims, which I'm denying.  I set forth the relevant law

9     on that type of motion in a case called *Calibuso v. Bank of*

10    *America*, 893 F.Supp.2d 374, 384 (E.D.N.Y. 2012), and I adopt

11    that by incorporation in its entirety without repeating it here.

12    I just quickly note, in connection with that standard, as I

13    noted in that case, motions to strike are heavily disfavored at

14    this stage because they "pre-emptively terminated the class

15    aspects of litigation solely on the basis of what is alleged in

16    the complaint, before Plaintiffs are permitted to complete

17    discovery to which they would otherwise be entitled on questions

18    relevant to class certification."  *Ironforge.com v. Paychex*, 404

19    (W.D.N.Y. 2010).

20         Defendant argues that the Court should strike the

21    class allegations because individualized choices of law and

22    factual questions would dominate over class-wide issues.  I find

23    that it would be premature to dismiss the class claims on those

24    grounds at this juncture of this case.  For example, with

25    respect to the choice of law questions, Paragraph 6(g) of the

1  terms and conditions, states that any dispute by a merchant,

2  will be governed by New York law.  So, in the event the terms

3  and conditions prove binding, there would be no choice law

4  problems for the class.  And EVO acknowledges that the choice of

5  law issues only arise if the terms and conditions are not

6  binding.  But even if this is true, it's not clear to me that

7  the choice of law issues would make this case inappropriate for

8  class certification.

9       At this point, at its core, this case involves basic

10  principles of contract law that could be very similar across

11  most jurisdictions as evidenced by the fact, as I've analyzed

12  today, that Georgia and Pennsylvania are virtually identical on

13  all the issues raised in this motion.  For any discrepancies

14  that may arise, moreover it may be possible for the Plaintiff or

15  the Court to craft an approach that accounts for them as other

16  courts have done where there have been such conflicts, including

17  in the *In re Checking Account Overdraft litigation*, 307 FRD 630,

18  652-655 (S.D. Fla. 2015).  And in that same case, another

19  opinion that did so is 275 FRD 666, 680 (S.D. Fla. 2011).

20  Therefore, at the very least, I find it's premature to strike

21  the class claims based on potential choice of law issues that

22  may arise in the future.

23       I reach the same conclusion with the Defendant's

24  argument about individualized factual issues.  Defendant

25  contends that its negotiation with each member, the pricing and

1  fees are agreed upon, whether the terms and conditions were

2  provided to each member and received, each member's compliance

3  with the agreement, the fees charged and damages, all involve

4  highly individualized factual inquiries into EVO's relations

5  with each individual class member.

6          However, the amended complaint alleges several factual

7  questions that may be sufficient to establish the commonality

8  and (inaudible) requirements of Rule 23.  For example, Plaintiff

9  alleges that it was Defendant's common practice not to provide

10  the terms and conditions to prospective clients.  That's

11  Paragraph 60 and 85(e).  So, for example, if discovery showed

12  that it was the practice never to send these to any clients,

13  there certainly wouldn't be any individualized determinations on

14  that fact.  And they also allege similarly that it was a common

15  practice to charge the excessive and unauthorized fees,

16  suggesting that they were charged to every member of the class.

17  That's Paragraphs 74, 75 and 85(g).

18          I believe this is enough to survive a motion to strike

19  at this preliminary stage of the case.  Therefore, because EVO's

20  arguments against class certification are premature, I'm denying

21  the motion to strike at this time.  So, in sum, I'm granting the

22  motion to dismiss Counts 1 and 2 because they are predicated on

23  the assumption that the Agreement needed to be countersigned,

24  which the Court has found is incorrect, that no countersignature

25  was required, and the party's performance rendered the agreement

1   enforceable.  I'm denying the motion to dismiss in all other

2   respects, and I'm denying the motion to strike.  All right?  So,

3   do you want to propose a date for the answer, Mr. Balser?

4          MR. CHALLY:  This is Mr. Chally.  I'm happy to.

5          THE COURT:  Okay.

6          MR. CHALLY:  We should be able to answer within the

7   two weeks that the rules would require.  So, we will plan to

8   answer on the 15th of September if that's okay with the Court.

9          THE COURT:  Sure.  You said the 15th?

10          MR. CHALLY:  Yes, sir.

11          THE COURT:  Yes.  That's certainly acceptable.  And

12   then obviously, the Magistrate Judge will take over the

13   supervision of discovery in the case.  All right?

14          MR. CHALLY:  Thank you.

15          THE COURT:  Any other issues for today?  Anything from

16   you, Mr. Webb?

17          MR. WEBB:  Your Honor, I'm just -- please tell me to

18   shut up if this is inappropriate, but I want to just give you a

19   heads-up.  We did file a case, which I know the Court is aware

20   of, in the same court, and it is announced as a related case by

21   a couple of other small businesses against EVO.  And it is

22   before still Judge Azrack.  And I just wanted to notify you of

23   that.  I think you're already aware of, but I would have thought

24   it would have been forwarded to you just on a standard of

25   related cases and efficiencies of the court; not trying to do

1    anything with that at this time, but I did want to use this

2    opportunity to just alert you to that.

3              THE COURT:  Yes.  I did see the -- there was a

4    notification on my docket of the related case, and I did note

5    that.  But what I would suggest you do would be, if you believe

6    that that case should be transferred under that rule to me, I

7    would write a letter to Judge Azrack.  Obviously, you should

8    speak to your opposing counsel in that case, and see if they

9    agree that it should be transferred.  And then write a letter to

10   Judge Azrack, and that would usually then trigger a discussion

11   between our chambers as to whether or not it should be done.

12   But we usually want to see whether or not there's any

13   disagreement on whether or not they're related or not.  Okay?

14             MR. WEBB:  Thank you.

15             THE COURT:  All right.  Anything else from Defendant's

16   counsel?

17             MR. CHALLY:  No, Your Honor.  Thank you very much.

18             THE COURT:  All right.  Thank you.  Have a good day.

19                         - o0o -

20

21

22

23

24

25

CERTIFICATION

          I, Rochelle V. Grant, certify that the foregoing is a
correct transcript from the official electronic sound recording
of the proceedings in the above-entitled matter.

Dated:  September 8, 2017

                                    _____
                                         Rochelle V. Grant